# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| BRENDA W. | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  CAUSE NO.: 2:20-CV-30-JVB |
| | ) |
| ANDREW SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
|    Defendant. | ) |

## OPINION AND ORDER

Plaintiff Brenda W. seeks judicial review of the Social Security Commissioner's decision denying her claim for disability insurance benefits and supplemental security income and asks the Court to remand this case for further administrative proceedings. For the reasons given below, the Court affirms the decision of the Commissioner of Social Security.

## PROCEDURAL BACKGROUND

In her application for disability insurance benefits and supplemental security income, Plaintiff alleged that she became disabled on October 8, 2015. After a hearing on September 17, 2018, an Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of cerebellar ataxia; status-post lumbar fusion and laminectomy; osteoarthritis of the left knee; and bursitis of the left hip. (AR 12). The ALJ found that Plaintiff is unable to perform any past relevant work, but that jobs exist in significant numbers in the national economy that Plaintiff can perform. (AR 18-19). Therefore, the ALJ found Plaintiff not disabled from October 8, 2015 through the date of the decision. (AR 19). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

**STANDARD OF REVIEW**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

**DISABILITY STANDARD**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**ANALYSIS**

Plaintiff argues that the ALJ inappropriately failed to consider whether Plaintiff met or equaled Listing 11.17, and erred in evaluating Plaintiff's own testimony about her symptoms.

**A. Listing 11.17(a)**

At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. See 20 C.F.R. §§

2

404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. See *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id.*

Plaintiff argues that the ALJ should have considered whether she met or equaled Listing 11.17(a) ("Neurodegenerative disorders of the central nervous system"). Although the ALJ considered several listings, he did not address Listing 11.17 in the decision. Listing 11.17(a) is satisfied when the claimant has a neurodegenerative disorder of the central nervous system, "characterized by . . . [d]isorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. 404, Subpt. P, App. 1, § 11.17 (citations omitted). "Disorganization of motor function" means interference with the movement of two extremities. *Id.*, § 11.00D1. "Extreme limitation" in a task means an "inability" to do that task without assistance. *See id.*, § 11.00D2. Essentially, to satisfy Listing 11.17(a), Plaintiff would have to show that she could not perform one of the three enumerated tasks – standing from a seated position, balancing while upright, or using her arms and hands – without assistance.

Plaintiff points to significant medical evidence of her "disorganization of motor function," including "abnormalities" in her balance (AR 473); ataxic (i.e., unsteady) gait (*e.g.*, AR 333-34, 337-38); and abnormal coordination and reflexes (*id.*), and her reports of having fallen on multiple occasions (*e.g.*, AR 393, 476). The state agency examiner noted that she had a positive Romberg's

3

sign, meaning she had difficulty balancing with her eyes closed[1], and she had "significant difficulty with being able to bend and squat and walk [a] straight line." (AR 480).

Although this is clear evidence that Plaintiff has severe impairments that affect her balance, this evidence does not satisfy the criteria of Listing 11.17(a). Although she was occasionally recorded with difficulty standing and walking, the record does not show that she was unable to walk. The listing is clear that the claimant must have an "extreme limitation," i.e., the "inability" to do these tasks. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 11.00D2. Specifically, "[i]nability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without [ ] assistance," and "[i]nability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without [ ] assistance." § 11.00D2(a),(b)[2]. There is no doubt Plaintiff has had difficulty walking, squatting, and balancing, all of which bears on the determination of her functional capacity. However, the evidence does not show that she was *unable* to stand from a seated position or maintain an upright position, and therefore does not meet the agency's high standard for a conclusive presumption of disability. *See, e.g., Titus v. Comm'r of Soc. Sec.*, No. 1:18-CV-749, 2019 WL 5273958, at *7 (W.D. Mich. Aug. 12, 2019) (finding substantial evidence that Listing 11.17(a) was not met where the claimant was sometimes able to walk without assistance). The ALJ discussed the medical evidence and Plaintiff's own allegations in the RFC analysis, including medical notes where Plaintiff indicated she was not experiencing falls, and was able to walk short distances. *See* (AR 16-17). Because the evidence does not establish the criteria for the Listing, the Court finds no error

---

[1] Forbes, J. and Heather Cronovich, *Romberg Test*, *available at* https://www.ncbi.nlm.nih.gov/books/NBK563187/ ("The [ ] test is positive when the patient has a loss of balance with their eyes closed. Loss of balance can be defined as the increased swaying of the body, foot movement in the direction of the fall, or falling.").

[2] Plaintiff does not argue that she had an inability to use her upper extremities, which is the third way in which a claimant could satisfy Listing 11.17(a).

in the ALJ's failure to discuss the listing, nor in the fact that he declined to seek a medical opinion on the listing. *See Sims v. Barnhart*, 309 F.3d 424, 430 (7th Cir. 2002) ("An ALJ must consider evidence that would establish the criteria, but he need not mention evidence that fails to establish them."); Social Security Ruling 17-2p, 2017 WL 3928306, *3-4 (Mar. 27, 2017) (explaining that ALJs determine whether a listing is met or equaled, and "*may* ask for and consider evidence from medical experts") (emphasis added).

### B. Subjective Allegations

Next, Plaintiff argues that the ALJ erred in evaluating her subjective allegations. An ALJ must consider a claimant's statements about his or her symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

Plaintiff first objects to the ALJ's statement that Plaintiff reported she had "no falls at all." (AR 17). Plaintiff points to several instances in the record in which she complained of falls, and argues that the ALJ was wrong to suggest that she did not. However, the ALJ's characterization of the record was accurate. Specifically, the ALJ found that "the claimant *often noted* that she had no falls at all." (emphasis added) The ALJ identified several instances in which Plaintiff claimed

5

that she had no falls. *See, e.g.,* (AR 16 (citing AR 697), 17 (citing AR 703)). Although the record indicates that there were instances of Plaintiff falling, that does not contradict the ALJ's statement. The ALJ had to assess whether Plaintiff's testimony that she fell about three times a week was supported by the record. The ALJ could properly find that Plaintiff's statements about not having falls were inconsistent with this testimony. *See* (AR 17); SSR 16-3p, 2017 WL 5180304, at *6 (ALJs must "evaluate whether the [claimant's] statements are consistent with objective medical evidence and the other evidence").

Plaintiff also argues that the ALJ erred in making a negative inference from her failure to pursue therapy as recommended. When failure to comply with treatment recommendations is used to assess a claimant's allegations, the ALJ must investigate whether the lack of treatment is justified and develop the record accordingly. *See* SSR 16-3p, 2017 WL 5180304 at *8; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.").

In this case, the ALJ noted that Plaintiff "never attended therapy as recommended," but made no apparent inquiry or explanation as to why. There was evidence in the record of Plaintiff foregoing testing and therapy because her insurance would not pay for it. *See* (AR 391, 470). The ALJ erred by making a negative inference against Plaintiff without exploring whether she could afford therapy. However, the Court finds that remand is not required because the ALJ's credibility finding is adequately supported by other reasons. *Hoyt v. Colvin*, 553 F. App'x 625, 628 (7th Cir.

6

2014) ("Even if [failure to explore lack of treatment] amounts to error, it does not undercut the ALJ's other valid reasons for discounting Hoyt's testimony."). In assessing Plaintiff's allegations that her impairments were disabling, the ALJ noted that Plaintiff cooked, cleaned the bathroom, washed dishes, let the dog outside, and did other chores; that two treating physicians, including her treating neurologist, indicated that she would be capable of office work; and that despite her claim that she had trouble using her hands, a consultative exam revealed intact grip strength and finger manipulation. Given this evidence, the Court finds that the ALJ's error is harmless, because an inquiry into why Plaintiff did not seek additional therapy would not change the result. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("We will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.") (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)).

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief requested in Plaintiff's Brief [DE 12], and **AFFIRMS** the decision of the Commissioner of Social Security.

SO ORDERED on February 5, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
